EDWIN WALLACE *et al.* *vs.* MORRIS L. HALLOWELL, Jr., *et al.*

Argued Jan. 12, 1894. Reversed Feb. 10, 1894.

No. 8558.

**Measure of damages in actions for fraud or deceit.**
    *Reynolds* v. *Franklin*, 44 Minn. 30, and subsequent cases, followed as to the measure of damages in actions of deceit or fraud.

**Facts stated and rule applied.**
    Plaintiffs, being the owners of notes executed by S., and also of other notes executed by L., by means of false and fraudulent representations as to the financial responsibility of S., (no representations being made as to the notes of L.,) induced defendants to give their own notes in exchange for the notes of S. and of L., the whole being one indivisible transaction. But for these false and fraudulent representations, no part of the transaction would have been consummated. In an action on the notes given by defendants to plaintiffs in the exchange, *held*, that the damages which defendants are entitled to on account of the fraud are not limited to the impaired value of the S. notes, but that the measure of damages is the difference between the amount of the notes sued on and the actual value at the date of the transaction, of both the S. and the L. notes.

Appeal by defendants, Morris L. Hallowell, Jr. and Samuel P. Snider, from a judgment of the District Court of Hennepin County, *Seagrave Smith*, J., entered August 7, 1893, against them for $17,844.75.

On July 31, 1891, the defendants were merchants doing business at Minneapolis under the firm name of M. L. Hallowell Jr. & Co. and were indebted to various parties on notes falling due in a few days thereafter. The plaintiffs, Edwin Wallace and Ebenezer G. Wallace, were partners in business at Rochester, N. H. under the firm name of E. G. & E. Wallace. On that day Snider was in Boston, Mass. and there met Edwin Wallace, and as a means for raising money to meet the maturing paper of his Minneapolis firm he made the notes of that firm and exchanged them with Wallace for business paper held by the New Hampshire firm. He thereby obtained from Wallace three notes for $2,745.08 each made by W. E. Schmertz & Co. of Pittsburg, Pa., and three other notes for $5,000 each made by Lee & Ferguson of Brazos, Texas. These six notes Snider indorsed and by the aid of the Stoughton Rubber Co. of Boston had them discounted and thereby raised money to meet the paper of his Minneapolis firm.

On the exchange of notes Wallace told Snider that W. E. Schmertz & Co. were conducting an extensive business and were as good as gold, and that their notes would be paid at maturity. Defendants had no knowledge of or concerning W. E. Schmertz & Co. and relied upon the representations and were thereby induced to make the deal. They would not otherwise have made it. W. E. Schmertz & Co. were in fact insolvent and within a few days thereafter confessed large judgments in favor of other creditors and became entirely worthless. The Lee & Ferguson notes remained uncollected and were alleged to be worth no more than twenty five percent of their face. M. L. Hallowell Jr. & Co. afterwards took up the six notes and tendered them back to plaintiffs and demanded the notes given on the exchange. Plaintiffs refused and brought this action on defendants' notes. The defendants answered setting up these facts and asked damages for the fraud.

At the trial the court instructed the jury that they could allow to defendants as set off the amount of the W. E. Schmertz & Co.

paper, but could not set off anything for the Lee & Ferguson paper. Defendants excepted. The jury returned a verdict for plaintiffs for $15,000 and interest. Defendants moved for a new trial, but were denied and judgment was entered upon the verdict. From that judgment defendants appeal.

*F. B. Hart* and *Cross, Carlton & Cross,* for appellants.

The alleged deceit is based upon misrepresentation as to the solvency of W. E. Schmertz & Co. No representations whatever were made concerning the Lee & Ferguson paper. The transaction however was in gross and defendants would not have contracted for or purchased the Lee & Ferguson paper alone. Defendants were anxious to realize a certain amount of cash or its equivalent. They were induced by plaintiffs' representations to believe that the W. E. Schmertz & Co. paper was as good as cash. Relying upon this representation they made the contract embracing both the W. E. Schmertz & Co. and the Lee & Ferguson paper. The fraud or deceit is established by the verdict of the jury. The allegation in the answer that the W. E. Schmertz & Co. paper was utterly valueless is also established by the verdict of the jury. The court instructed the jury that the only damage that could be allowed defendants in case they should find the defendants' contention true would be the impaired value of the W. E. Schmertz & Co. notes. To this instruction defendants excepted. The Lee & Ferguson paper with accrued interest at the date of the trial amounted to $17,528.67. This court has very tersely stated the rule of damages to be the difference in value between what the defrauded party gave and what he got. *Fixen* v. *Blake,* 47 Minn. 540.; *Alden* v. *Wright,* 47 Minn. 225; *Reynolds* v. *Franklin,* 44 Minn. 30; *Redding* v. *Godwin,* 44 Minn. 355; *Stickney* v. *Jordan,* 47 Minn. 262.

This rule also obtains in other states. *Clayton* v. *O'Connor,* 35 Ga. 193; *Hallam* v. *Todhunter,* 24 Ia. 166; *Hiner* v. *Richter,* 51 Ill. 299; *Wintz* v. *Morrison,* 17 Tex. 372; *Brown* v. *Wood,* 3 Coldw. 182; *Rose* v. *Wallace,* 11 Ind. 112; *Pinney* v. *Andrus,* 41 Vt. 631; *Crater* v. *Binninger,* 33 N. J. Law, 513; *Smith* v. *Bolles,* 132 U. S. 125.;

*Atwater* v. *Whiteman*, 41 Fed. Rep. 427; *Glaspel* v. *Northern Pac. R. Co.*, 43 Fed. Rep. 900; *Buschman* v. *Codd*, 52 Md. 202; *Horne* v. *Walton*, 117 Ill. 141; *Horne* v. *Walton*, 117 Ill. 130; *Logan v. Monroe*, 20 Me. 257; *Peek* v. *Derry*, 37 Ch. Div. 541.

*McNeir & Bacon*, for respondents.

The plaintiffs were owners on August 3, 1891, of three notes made by Lee & Ferguson for $5,000 and interest each, and also of three notes made by W. E. Schmertz & Co. amounting in the aggregate to $8,299.24, including interest to that date. These notes were exchanged with Snider for the notes sued upon, one for $10,-000, one for $5,000 and one for $9,481.18. Snider claims that the plaintiffs made representations as to the business responsibility of W. E. Schmertz & Co. at the time of the exchange. No representations relating to the Lee & Ferguson paper were made. At the trial defendants sought to prove that the Lee & Ferguson notes were valueless at the time of transfer, and that in fact they received no consideration whatever for the notes sued upon, to which testimony the plaintiffs objected and the objection was sustained. To this ruling defendants excepted. The only thing of which the defendants complain is the rule of damages adopted by the court below, which they claim is in conflict with the doctrines announced by this court.

The recent decisions of this court are contrary to the authorities all over the union. *Wright* v. *Roach*, 57 Me. 600; *Bowman* v. *Parker*, 40 Vt. 410; *Noyes* v. *Blodgett*, 58 N. H. 502; *Morse* v. *Hutchins*, 102 Mass. 439; *Krumm* v. *Beach*, 96 N. Y. 398; *Stetson* v. *Croskey*, 52 Pa. St. 230; *Foster* v. *Kennedy*, 38 Ala. 359; *Campbell* v. *Hillman*, 15 B. Mon. 508; *Nysewander* v. *Lowman*, 124 Ind. 584; *Totten* v. *Burhans*, 91 Mich. 495; *Birdsey* v. *Butterfield*, 34 Wis. 52; *White* v. *Smith*, 54 Ia. 233; *Langdon* v. *Green*, 49 Mo. 363; *Cooper* v. *Schlesinger*, 111 U. S. 148; *McHose* v. *Earnshaw*, 55 Fed. Rep. 584.

The rule in *Reynolds* v. *Franklin*, 44 Minn. 30, seems to have been adopted under a misapprehension of the ruling in *Smith* v. *Bolles*, 132 U. S. 125, and *Woolenslagle* v. *Runals*, 76 Mich. 545, with the object of bringing this court into line with the decisions

of the Federal Courts. In view of the fact that the rule in *Doran* v. *Eaton,* 40 Minn. 35, and *Potter* v. *Mellen,* 36 Minn. 122, is supported by so great a weight of authority and had become the established rule in this state under repeated decisions, we can come to no other conclusion. The rule in *Reynolds* v. *Franklin* works badly in practice and is illogical.

MITCHELL, J. This case grows out of an exchange of notes between plaintiffs and defendants. The plaintiffs were the owners of certain notes executed by W. E. Schmertz & Co., and of certain other notes executed by Lee & Ferguson, amounting in the aggregate to over $24,000. These notes were exchanged with defendants for notes executed by defendants to plaintiffs of the same amount. This action is upon the notes thus executed by defendants.

The defendants set up, by way of counterclaim, damages occasioned by the alleged false and fraudulent representations of the plaintiffs, intended to induce, and which did induce, the defendants to make the exchange. The alleged representations were as to the financial standing and responsibility of W. E. Schmertz & Co., no representations being made as to the Lee & Ferguson paper. There is no question but that the deal was all one entire transaction, defendants' notes being given as one indivisible consideration for both the W. E. Schmertz & Co. and the Lee & Ferguson paper.

Upon the trial, defendants introduced evidence tending to prove all the allegations of the answer,—among others, that, by reason of these false and fraudulent representations, they were induced to make the deal, and that but for such representations no part of the transaction would have been consummated, and that defendants would not have purchased the Lee & Ferguson notes except as coupled with the W. E. Schmertz & Co. paper. The evidence tended to prove that the W. E. Schmertz & Co. paper was worthless. The defendants offered to prove that the Lee & Ferguson paper was also worthless at the time of the transaction, but the evidence was excluded; the court holding that defendants' damages must be limited to and measured by the impaired value of the W. E. Schmertz & Co. notes, and that no damages could be allowed on account of the Lee & Ferguson paper, inasmuch as the alleged fraudulent representations did not pertain to that paper.

The jury allowed defendants' counterclaim to the full amount of the W. E. Schmertz & Co. notes, and found a verdict against them for the balance of their notes.

The principal question in the case is as to the proper measure of damages, and this is raised by the ruling of the court in excluding evidence as to the value of the Lee & Ferguson notes.

It will be observed that the gist of defendants' claim is the fraud and deceit of the plaintiffs, by reason of which they were induced to make a deal which otherwise they would not have made at all. In accordance with the cardinal principle that compensation should be commensurate with the loss, the rule is, and always has been, that in actions of deceit, or for fraudulent representations, the damages recoverable are all those which naturally and proximately result from the fraud. Courts may have sometimes failed to use strictly accurate terms in stating the rule, and may have sometimes failed to apply it correctly to particular facts, but no court has ever questioned the rule itself.

In cases of this kind the inquiry should be—First, of what did the fraud consist? second, what action on part of the person on whom it was practiced was the fraud intended and calculated to induce, and what action did it induce? and, third, what loss has the person suffered, as the natural and proximate result of such action?

In the present case, it is true that the false and fraudulent representations only related to the W. E. Schmertz & Co. paper, but, according to the pleadings and proof, the purpose for which they were made was to induce the defendants to buy both the W. E. Schmertz & Co. and the Lee & Ferguson paper; and the purchase of all this paper was induced by these representations, without which none of it would have been bought. Applying the rule already suggested, the damage to be recovered is the loss which defendants have sustained by acting on plaintiffs' representations. That action was buying the W. E. Schmertz & Co. and Lee & Ferguson paper, and giving their own notes for it.

Let us see how defendants stood before the deal, and then how they stood after it. Before they were induced to make the deal, they owed nothing, and they did not own the W. E. Schmertz & Co. and Lee & Ferguson notes. That is just where they would have continued to stand, but for the fraud of the plaintiffs inducing them

to make the exchange. Now, upon making the exchange, the defendants owned the W. E. Schmertz & Co. and Lee & Ferguson paper, and plaintiffs held defendants' notes for an equal amount. Now, what is the loss which defendants sustained in consequence of the action induced by plaintiffs' fraud? Clearly, the difference between the value of their own notes (which, for present purposes, we must take to be their face) and the value of the Lee & Ferguson and the W. E. Schmertz & Co. paper at the date of the exchange. *Smith* v. *Bolles,* 132 U. S. 125, (10 Sup. Ct. 39;) *Peek* v. *Derry,* 37 Ch. Div. 541; *Crater* v. *Binninger,* 33 N. J. Law, 513; *Reynolds* v. *Franklin,* 44 Minn. 30, (46 N. W. 139;) *Redding* v. *Godwin,* 44 Minn. 355, (46 N. W. 563;) *Alden* v. *Wright,* 47 Minn. 225, (49 N. W. 769;) *Stickney* v. *Jordan,* 47 Minn. 262, (49 N. W. 980;) *Fixen* v. *Blake,* 47 Minn. 540, (50 N. W. 612.)

It follows that the trial court erred in excluding evidence as to the actual value of the Lee & Ferguson notes at the date of the exchange. This is all that need be said ·on this point, for the purposes of this appeal; but counsel for plaintiffs has, in his exhaustive and learned brief, discussed extensively the law as to the measure of damages in such cases, and has asked us to reconsider some of our decisions on the subject, because, as he claims, they are based on a misapprehension of the rulings in *Smith* v. *Bolles, supra,* and other cases of that class, and are contrary to the general current of authority elsewhere. It may be well, therefore, to refer briefly to these criticisms.

As we understand counsel, his contention is that the rule laid down in *Smith* v. *Bolles* is only applicable to cases where the suit is not between parties to a contract of sale, and is based upon the pure tort of a stranger to the contract, but that where the action is between the vendor and vendee, in case of the sale or exchange of property, and the deceit consists of false and fraudulent representations as to the property sold, the measure of damages in an action for the deceit is, in all cases, the same as in action for breach of the warranty, viz. the difference between the actual value of the property and its value if it had been as represented.

Numerous cases are cited where that rule was applied, but in none of them will it be found that the damages resulting from the fraud exceeded, in any view of the law, this difference in values;

and no case, we think, will be found, which holds that in actions between vendor and vendee the damages which may be recovered for false and fraudulent representations as to the quality or value of the property sold are necessarily limited to what might have been recovered in an action for a breach of a warranty consisting of the same representations made without fraud. To so hold would be to except transactions between vendor and vendee from the general rule that the defrauded party is entitled to recover all damages naturally and proximately resulting from the fraud. The books are full of cases where the damages resulting from the fraud, which the defrauded party was allowed to recover, were different and greater than he could have recovered, viewing the same representations merely as a warranty. *Bowman* v. *Parker*, 40 Vt. 410, and *Crater* v. *Binninger*, *supra*, cited by counsel, are instances of this kind. *Marsh* v. *Webber*, 13 Minn. 109, (Gil. 99,) where the vendor falsely and fraudulently represented to the vendee that sheep were sound, when in fact they had a contagious disease, is another familiar instance.

A man is liable on his warranty, merely as such, only to the extent of his contract; whereas, in a case of fraud and deceit, he is liable for all the natural and proximate consequences of his fraud.

We see no reason to doubt the correctness of the rule adopted in *Reynolds* v. *Franklin*, and cases following it. Of course, the statement of the rule must always be construed in the light of the facts of the case then being considered. For example, in some of the cases it is said that the measure of damages is the difference in values of what the party was induced to part with and of what he got by the purchase. As applied to the facts of those cases, this was correct, but it would not do to adopt this as a rule of universal application, for the reason that under some circumstances it might exclude certain elements of damage naturally and proximately resulting from the fraud. In *Stickney* v. *Jordan*, *supra*, the special damages claimed, even if recoverable at all, were not sufficiently pleaded,—a fact which does not clearly appear from either the opinion or the statement of the case.

Where, in actions between vendor and vendee, the fraudulent representation is also a warranty of the goods sold, and the cause of action pleaded may be treated as sounding either in tort or

contract, the courts have generally held that the plaintiff is entitled "to the benefit of his bargain," and hence is entitled to recover as damages the difference between the actual value of what he got and what its value would have been if as represented or warranted. The arguments in favor of this rule are perhaps as well stated as anywhere in *Morse* v. *Hutchins*, 102 Mass. 439. It is exclusively with reference to this class of cases that Mr. Sedgwick, in the last edition (eighth) of his work on Damages, (sections 778–781,) criticises *Smith* v. *Bolles*, *supra*, and *Peek* v. *Derry*, *supra*. Whether this is a proper rule to apply in that class of cases, we need not now consider. We have no such case now before us. The gravamen of defendants' charge is that, by reason of the fraud of the plaintiffs, they were induced to exchange their notes for the W. E. Schmertz & Co. and Lee & Ferguson notes.

There is nothing in the first three points in plaintiffs' brief that requires special notice, except to say that, whatever the evidence might show, the defendants would be bound by the admission in their answer as to the value of the Lee & Ferguson notes.

Defendants' counsel, on the argument, asked that the case be remanded merely for the purpose of assessing the value of the Lee & Ferguson paper. But, as the case comes up on a bill of exceptions, we do not feel warranted in adopting this course. The trial court is better qualified to determine whether the ends of justice would be best subserved by ordering a new trial of the whole case, or only of the one issue referred to.

The cause is remanded, with direction to the District Court to grant a new trial, either of the whole case, or only of the issue as to the value of the Lee & Ferguson notes, as it may deem just.

(Opinion published 58 N. W. Rep. 292.)